**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **Vaughn Barrus,** | **REPORT AND RECOMMENDATION** |
| Plaintiff | |
| v. | 1:16-CV-0056-JNP-EJF |
| **Nancy A. Berryhill,** Acting Commissioner of the Social Security Administration | District Judge Jill N. Parrish Magistrate Judge Evelyn J. Furse |
| Defendant | |

On May 20, 2016, Plaintiff Vaughn Barrus filed this action asking this Court[1] to

remand the final agency decision denying his Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act, see 42 U.S.C. § 401–434.  The Administrative Law

Judge ("ALJ") determined that Mr. Barrus did not qualify as disabled within the meaning

of the Social Security Act.  (ECF No. 10, the certified copy of the transcript of the entire

record of the administrative proceedings relating to Vaughn James Barrus (hereafter

"Tr. __") 23.)  Having carefully considered the parties' memoranda, the complete record

in this matter, and the hearing held September 15, 2017, the undersigned

RECOMMENDS the Court remand the Commissioner's decision.

## FACTUAL AND PROCEDURAL HISTORY

On September 16, 2013, Mr. Barrus applied for DIB, claiming a disability onset

date of September 7, 2012.  (Tr. 160.)  Mr. Barrus claims migraines, affective disorder,

anxiety disorder, and sleep apnea render him disabled.  (Pl.'s Br. 2, ECF No. 17.)  In

---

[1] On February 15, 2017, Judge Parrish referred this case to the undersigned Magistrate
Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 19.)

seeking relief, Mr. Barrus tried numerous medications, chiropracty, acupuncture, massage, kinesiology, cognitive behavioral therapy, and a CPAP machine. (Tr. 20-21, 496-503.) On January 8, 2014, the Social Security Administration ("SSA") denied the claim and did so again on June 23, 2014 on reconsideration. (Tr. 14.) On January 21, 2016, an ALJ held a hearing. (Id.) On February 19, 2016, the ALJ made the following findings.

1.    [Mr. Barrus] meets the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 16.)

2.    [Mr. Barrus] has not engaged in substantial gainful activity since September 7, 2012, the alleged onset date (20 CFR 404.1571 et seq.). (Id.)

3.    [Mr. Barrus] has the following severe impairments: (1) migraine headaches; and (2) sleep apnea (20 CFR 404.1520(c)). (Id.)

4.    [Mr. Barrus] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 19.)

5.    After careful consideration of the entire record, the undersigned finds that [Mr. Barrus] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: except that [Mr. Barrus] can only occasionally balance; only occasionally climb ladders and scaffolds; and cannot tolerate any exposure to machinery or unprotected heights. (Id.)

6.    [Mr. Barrus] is unable to perform any past relevant work (20 CFR 404.1565). (Tr. 22.)

7.    [Mr. Barrus] was born on May 6, 1960 and was 52 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563). (Id.)

8.    [Mr. Barrus] has at least a high school education and is able to communicate in English (20 CFR 404.1564). (Id.)

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Barrus] is "not disabled," whether or not [Mr. Barrus] has

transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).  (Id.)

10.  Considering [Mr. Barrus]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Barrus] can perform (20 CFR 404.1569 and 404.1569(a)).  (Id.)

11.  [Mr. Barrus] has not been under a disability, as defined in the Social Security Act, from September 7, 2012, through the date of this decision (20 CFR 404.1520(g)).  (Tr. 23.)

Mr. Barrus appealed this decision to the Appeals Council submitting additional records from his psychologist.  (Tr.1-5.)  The Appeals Council considered the additional evidence but found no basis to alter the ALJ's decision.  (Tr. 2.)

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the SSA.  The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards.  42 U.S.C. § 405(g); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence."  O'Dell v. Shalala, 44 F.3d 855, 858

(10th Cir. 1994).[2]  The standard "requires more than a scintilla, but less than a preponderance." Lax, 489 F.3d at 1084.  "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988) (quoting Fulton v. Heckler, 760 F.2d 1052, 1055 (10th Cir.1985)).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir.1983)).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," Lax, 489 F.3d at 1084 (quoting Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005)), but "review[s] only the sufficiency of the evidence," Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  The court does not have to accept the Commissioner's findings mechanically but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800–01 (10th Cir.1991)).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by

[2] Courts apply the same analysis in determining disability under Title II and Title XVI. See House v. Astrue, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" Lax, 489 F.3d at 1084 (quoting Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); Thomson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993); Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. See 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750-53 (10th Cir. 1988); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity [RFC] to perform other work in the national economy considering his or her age, education, and work experience.

See 20 C.F.R. § 404.1520.  The claimant has the initial burden of establishing the disability in the first four steps.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy.  Id.

## I.      Step Two Finding of Non-Severe Impairment

Mr. Barrus argues the ALJ erred when she failed to find Mr. Barrus's depression and anxiety disorder constituted severe impairments, particularly in light of the new evidence submitted to the Appeals Council.  (Pl.'s Opening Br. 11, ECF No. 17.)

Step two of the sequential evaluation process requires the ALJ to decide whether the claimant has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments qualifies as severe when it significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  If the ALJ finds no severe impairments at step two the inquiry ends, and the ALJ finds the claimant not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  However, if the ALJ finds any impairment severe, the inquiry continues.  20 C.F.R. § 404.1520(a).  Subsequently, in determining the RFC, the ALJ considers all medically determinable impairments, including non-severe impairments.  20 C.F.R. § 404.1545(a)(2).  Because the ALJ

considers both severe and non-severe impairments at later steps, any failure to designate additional severe impairments at step two qualifies as harmless if the ALJ finds at least one severe impairment and continues with the sequential evaluation process. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008).

Here, the ALJ found at step two of the sequential evaluation process that Mr. Barrus had severe impairments consisting of migraine headaches and sleep apnea. (Tr. 16.)  Having found Mr. Barrus possessed these severe impairments, the ALJ continued with the sequential evaluation process.  (Tr. 19-23.)  Also at step two, the ALJ found Mr. Barrus had the medically determinable impairments of anxiety and depression but did not find them severe.  (Tr. 17.)  Because the ALJ found severe impairments at step two and continued the sequential evaluation process, any error at step two remains harmless.

## II. Use of Step-Two Findings to Substitute for RFC Assessment

The ALJ had an obligation to include these non-severe, medically determinable impairments in determining the RFC. 20 C.F.R. § 404.1545(a)(2).  Mr. Barrus argues the ALJ failed to do so.  (Reply 2-3, ECF No. 21.)  The Commission argues that the ALJ discussed the anxiety and depression when she found Mr. Barrus's mental fog, memory, and concentration problems unfounded.  (Def.'s Br. 10, ECF No. 20.)  Mental fog, memory, and concentration problems are not the same as panic attacks and suicidal ideation.  The Court finds that even if the ALJ correctly found Mr. Barrus's depression and anxiety not severe, he had the obligation to consider them in formulating Mr. Barrus's RFC, and he did not.  In failing to analyze the impact of Mr. Barrus's depression and anxiety on his RFC the ALJ committed a legal error.

In determining Mr. Barrus's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p" in addition to "opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 19.)  However, the ALJ never discussed the effect of Mr. Barrus's depression or anxiety on his RFC.  (See tr. 19-21.)

The ALJ acknowledges that Mr. Barrus testified to anxiety and panic attacks weekly and considering suicide.  (Tr. 20.)  Subsequently the ALJ states the evidence does not support Mr. Barrus's alleged pain and physical limitations, but she never explains how his anxiety and depression interact with his severe impairments in determining his RFC.

The Commissioner points to the ALJ's "significant" step two analysis.  (Def.'s Br. 10, ECF No. 20.)  The step two analysis fails to substitute for the RFC analysis for two reasons one legal and one factual.

After a number of unreported decisions came out with conflicting conclusions regarding whether an ALJ's step two analysis of a non-severe mental impairment could substitute for a step four analysis regarding that impairment, following which the Tenth Circuit issued a reported decision explicitly addressing the matter.  Wells v. Colvin, 727 F.3d 1061, 1064 n.2 (10th Cir. 2013).  The court stated, "most importantly, the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence.'"

In Wells,

after stating his conclusion that Ms. Wells' mental impairments were non-severe, the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." He then reiterated his conclusion that the mental impairments were non-severe. The language used suggests that the ALJ may have relied on his step-two findings to conclude that Ms. Wells had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures.

727 F.3d at 1069 (internal citations omitted). In the instant case, the ALJ does not even go so far as to say the step two findings do not result in further limitations in the RFC. The ALJ simply never analyzes the mental impairments of depression and anxiety again after finding them non-severe. Without a function-based analysis as opposed to a category-based analysis, the undersigned cannot review the ALJ's decision for substantial evidence. See SSR 96-8p, at *4; see also Wells, 727 F.3d at 1065; Catlin v. Colvin, No. 12-1474-JWL, 2014 WL 2922403, at *3 (D. Kan. June 27, 2014).

The facts on review create a further reason not to allow the step two analysis substitute for the RFC for the mental impairments. A significant part of the ALJ's finding of non-severity rested on her perception that Mr. Barrus had never even seen a therapist for his depression or anxiety. (Tr. 17-18.) That perception was wrong. The record before the ALJ disclosed that Mr. Barrus saw Steve Brown for panic attacks and anxiety. (Tr. 281.) After the ALJ's decision, Mr. Barrus submitted Dr. Brown's records to the Appeals Counsel, who made them part of the administrative record. (Tr. 1-5.) Those records reflect frequent visits to Dr. Brown, a Ph.D. psychologist, and diagnoses of generalized anxiety disorder, major depressive episodes, and migraine headaches, with prescribed treatment of cognitive behavioral therapy. (Tr. 495-503.) Those records address Mr. Barrus's depression and anxiety, along with his migraines, in more depth than other records. (Id.) Where the Appeals Council considered the treatment records,

the undersigned considers them as part of the record on review for substantial evidence. Vallejo v. Berryhill, 849 F.3d 951, 954 n. 1 (10th Cir. 2017); Martinez v. Barnhart, 444 F.3d 1201, 1208 (10th Cir. 2006). This evidence may well shift the ALJ's findings from not severe to severe for the depression and anxiety. Given that this evidence undermines the ALJ's analysis at step two, that analysis can hardly substitute for the analysis the ALJ should have performed in formulating the RFC.

Furthermore, the ALJ's failure to analyze the effect of the non-severe impairments on the RFC is an error that may be harmful. Depression can increase a patient's perception of pain and his reaction to it. See, e.g., Winfrey v. Chater, 92 F.3d 1017, 1021 (10th Cir. 1996) (finding ALJ failed to consider relevant factors supported by the record in analyzing claimant's pain, specifically "the possibility that psychological disorders combine with physical problems") (quoting Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). Further, anxiety, and in particular panic attacks may affect the type of workplace Mr. Barrus can work in and the number of days of work he will miss a month. Specifically, the ALJ, in reliance on the Vocational Expert ("VE"), found that Mr. Barrus could work as a survey worker or a sales attendant. (Tr. 23.) If Mr. Barrus could only have limited interaction with the public as way of accommodating his anxiety, neither of those jobs would be available. See Dictionary of Occupational Titles 205.367-054 Survey Worker, 1991 WL 671725 (listing interaction with people as significant), 299.677-010 Sales Attendant, 1991 WL 672643 (same). If Mr. Barrus missed work more than two days of work a month because of his combination of impairments, no jobs in the national economy would accommodate him. (Tr. 52.) Similarly, if Mr. Barrus's depression or anxiety in combination with his migraines took him off task

between five and ten percent of the workday, no jobs would could accommodate him.
(Tr. 53.)

Without a discussion of the effects of these medically determinable impairments in combination with the severe impairments, the undersigned cannot determine whether the ALJ would have found Mr. Barrus not disabled had she included these non-severe impairments in her RFC determination. Therefore, the undersigned RECOMMENDS the District Judge find the ALJ failed to analyze Mr. Barrus's depression and anxiety when determining his RFC requiring remand.

### III. The ALJ's Step Three Analysis—Listing 11.03

Second, Mr. Barrus contends that the ALJ erred at step three of the sequential evaluation process by failing to discuss whether his migraines equal Listing 11.03. (Pl.'s Opening Br. 7-8, ECF No. 17.) The Commissioner argues the ALJ considered Listing 11.03 and found Mr. Barrus did not meet the listing, and the record evidence does not support an equivalency finding. (Def.'s Br. 11-15, ECF No. 20.) The undersigned finds the ALJ's step three analysis fails to meet the legal requirements for such an analysis, and the remainder of the opinion does not contain enough analysis to permit the undersigned to find the error harmless.

Step three of the sequential evaluation process "asks whether any 'medically severe impairment,' alone or in combination with other impairments," meets or equals "any of a number of listed impairments so severe as to preclude 'substantial gainful employment.'" Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). If the claimant's impairments meet or equal the listing, the ALJ must find the impairments conclusively disabling. See 20 C.F.R. § 404.1520(d). If a claimant's impairments do

not meet a listing, his impairment may constitute the medical equivalent if he has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii). Where the claimant does not meet or equal a listing the ALJ must "discuss the evidence and explain why he found that [the claimant] was not disabled at step three." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted).

The ALJ here made the statement that "She [sic] does not meet the requirements of Listing 11.03 nonconvulsive epilepsy occurring more frequently than once weekly in spite of at least three months of prescribed treatment." (Tr. 19.) No one suggests that Mr. Barrus has nonconvulsive epilepsy. However, the ALJ never mentions whether she considered whether the migraines had the equivalent disabling effect of nonconvulsive epilepsy. This omission constitutes error.

In Fischer-Ross, the Commissioner appealed the district court's decision to remand a case based on insufficient findings at step three. See 431 F.3d at 731. The ALJ made a conclusory finding that the claimant's combination of impairments did not meet or equal "'the criteria of any impairment listed in . . . the Listing of Impairments.'" Id. at 732. Despite the conclusory finding at step three and in reversing the district court's decision to remand the case, the court applied the ALJ's detailed findings at steps four and five to find the ALJ had made sufficient findings to support a denial of disability. See id. at 734–35. The court explained that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment," as the failure at step three results in "harmless error." Id. at 733. Harmless error occurs

"where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Id. at 733–34. Additionally, the court reasoned that the harmless error analysis reflects sound policy because it prevents "unwarranted remands [that] needlessly prolong[] administrative proceedings." Id. at 730.

First, the undersigned already recommends remand based on the failure to analyze Mr. Barrus's RFC in light of his anxiety and depression. Thus, unwarranted remand does not present a concern in this case.

Second the addition medical evidence presented by Dr. Brown after the ALJ's decision raises an issue as to the validity of the agency medical opinions made without those records. Medical equivalence is a decision left to the ALJ. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). SSR 96-6p requires an ALJ to obtain an updated medical opinion "[w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Id. at *4. In this case, Dr. Brown's records could affect the equivalency analysis as they address the combination of anxiety, depression, and the migraines and specifically record the frequency of days Mr. Barrus finds himself incapacitated.

At the time of the ALJ's decision, Listing 11.03 required

nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months or prescribed treatment. With alteration of awareness or

loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.03 (Aug. 12, 2015).  The SSA's Program Operations Manual System (POMS) actually includes an equivalency analysis for Listing 11.03 when the claimant has migraines.  POMS DI 24505.015(B)(7)(b) Finding Disability Based on the Listing of Impairments, Second Example, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424505015 last visited Sept. 16, 2017. Moreover, an equivalency analysis requires consideration of the combination of impairments a claimant has.  20 C.F.R. § 404.1526(b)(3).  As discussed above, nothing in the ALJ's decisions indicates he considered the interaction of Mr. Barrus's depression and anxiety with his migraines, which a full equivalency analysis requires.

The ALJ never fully discusses Mr. Barrus's activities of daily living or the frequency of his headaches.  Rather, the ALJ notes the record does not support Mr. Barrus's reports of "disabling headaches twenty days a month with associated photo and sound sensitivity."  (Tr. 20.)  Listing 11.03 would appear to require two or more migraines a week that prevent Mr. Barrus from normal functioning.  Thus, the ALJ could partially discredit Mr. Barrus's reports regarding his migraines and still find his migraines equaled the severity of Listing 11.03.  The remainder of the ALJ's opinion does not include enough analysis for the undersigned to find that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  See Fischer-Ross, 431 F.3d at 733–34.

Earlier, the ALJ does give Dr. Slodki's, the Medical Expert's, testimony that Mr. Barrus's migraines "did not meet the requirements of Listing 11.03, and that there was

no evidence of physical disability, as there was no way to objectively verify the presence of, frequency or, and effect of medication on, [Mr. Barrus's] migraine headaches" great weight.  (Tr. 17.)  As part of this opinion, Dr. Slodki stated he lacked the qualifications necessary to evaluate Mr. Barrus's mental impairments, and the ALJ recognized this limitation.  (Tr. 17, 45-46.)  Absent consideration of these impairments, Dr. Slodki's assessment of equivalency is incomplete as the analysis must incorporate all medically determinable impairments.  Further, Dr. Slodki's testimony makes clear he did not evaluate whether Mr. Barrus's migraines equally disable him in the way nonconvulsive epilepsy disables some people because he does not think that is his role.  (Tr. 46-48.) Therefore, Dr. Slodki's opinion on Listing 11.03 does not support a finding that the ALJ engaged in an equivalency analysis for migraines.

The Commissioner invites the Court to examine the record and make its own determination that the evidence does not support an equivalency finding.  (Def.'s Br.14-15, ECF No. 20.)  "The ALJ's decision should [be] evaluated based solely on the reasons stated in the decision."  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  Attempting to justify the decision on other ground "overtep[s] our institutional role and usurp[s] essential functions committed in the first instance to the administrative process."  Id. at 1084-85.  Therefore, the undersigned will not engage in this analysis.

For all of these reasons, the undersigned RECOMMENDS the district judge find the ALJ committed reversible error at step three by failing to provide the required equivalency analysis.

## IV. Evaluation of Mr. Barrus's Credibility

Mr. Barrus next argues the ALJ did not evaluate his credibility properly by relying on boilerplate language and invalid reasons.  (Pl.'s Br. 9-11, ECF No. 17.)  The Commissioner disagrees stating the ALJ provided specific, record-based reasons to discount Mr. Barrus's testimony.  The undersigned finds the ALJ provided specific, record-base reasons to discount Mr. Barrus's testimony, but not all of them are valid.  Because the undersigned already recommends remand, the undersigned recommends the ALJ reevaluate Mr. Barrus's credibility in light of the new evidence and this Report and Recommendation.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Id. (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).  If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions.  Id.  To make this analysis, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. (citation and internal quotation marks omitted).  But this analysis "does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found one could reasonably expect Mr. Barrus's medically determinable impairments could cause his alleged symptoms.  (Tr. 20.)  However, the ALJ found Mr. Barrus's statements about the intensity, persistence, and limiting effects of his symptoms lacked complete credibility.  (Id.)  The ALJ found the objective medical evidence did not support the severity of pain alleged; Mr. Barrus's medical providers never noted he was in acute distress; and Mr. Barrus engaged in strenuous activity at times and preferred to work outside.  (Tr. 20-21.)

Specifically, the ALJ held that "there is no objective diagnostic evidence of abnormalities of the brain, and therefore no objective diagnostic evidence support[s] the claimant's allegations of severe, frequent migraine headaches."  (Tr. 20.)  On that basis, the ALJ discounts Mr. Barrus's credibility.  Many courts have noted that migraines present a particular difficulty.  See, e.g., Groff v. Comm'r of Soc. Sec., No. 7:05-CV-54, 2008 WL 4104689, at *6–8 (N.D.N.Y. Sept. 3, 2008) (unpublished) (recognizing difficulty of objectively identifying migraines as medically determinable impairments); Federman v. Chater, No. 95 Civ. 2892 (LLS), 1996 WL 107291, at *2–3 (S.D.N.Y. Mar. 11, 1996) (unpublished) (same); Abdon v. Astrue, No. 10-96-GWU, 2010 WL 5391452, at *5 (E.D. Ky. Dec. 22, 2010) (unpublished) (noting difficulty of evaluating subjective allegations of pain stemming from migraines for purposes of evaluating pain in the context of determining the RFC); McCormick v. Sec'y of Health & Human Servs., 666 F. Supp.

121, 123 (E.D. Mich. 1987) (noting "[migraine] headaches are not traced easily to an objective medical condition"), aff'd, 861 F.2d 998 (6th Cir. 1988). In Groff, the district court acknowledged "the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines." Groff, 2008 WL 4104689, at *7–8. The Groff court cited medical literature noting

> [t]he cause [of a migraine] is unknown and the pathophysiology is not fully understood.... The mechanism for migraines is not well defined, but several triggers are recognized[, including] insomnia, barometric pressure change, and hunger.... Symptoms usually follow a pattern in each patient.... The patient may have attacks daily or only once every several months. Diagnosis is based on the symptom patterns when there is no evidence of intracranial pathologic changes. Migraine is more probable when the patient has a family history of migraine.... No diagnostic tests are useful, except to exclude other causes. Treatment depends on the frequency of attacks and the presence of comorbid illness. In general, treatment can be classified as prophylactic, abortive, or analgesic.

Id. (alteration in original) (quoting The Merck Manual 1376 (17th ed. 1999)). Holding the absence of an objective diagnostic test for migraines against a claimant and finding the claimant's subjective complaints not credible as a result makes no sense. The claimant is no more or less credible based on the state of medical field's development in migraine diagnosis and treatment. An ALJ still has available to her the other standard factors to evaluate pain:

> the levels of medication and their effectiveness, the effectiveness of the attempts (medical and nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993)). Thus, the lack of objective evidence of a migraine is not a legitimate basis to discount a claimant's testimony.

However, the ALJ provides a number of other reasons to question the consistency of Mr. Barrus's complaints with the record.  Given the undersigned recommends remand for other reasons, the undersigned recommends the remand include a reevaluation of Mr. Barrus's credibility in light of the addition evidence and this Report and Recommendation.  The ALJ did, however, follow the correct legal standard in evaluating Mr. Barrus's credibility.

## V.    Evaluation of Treating Physician Medical Evidence

Mr. Barrus argues the ALJ erred by failing to provide legitimate reasons for according little weight to the opinion of his treating medical provider, Dr. Embley and/or according significant weight to the non-examining agency physicians.  (Pl.'s Opening Br. 11-13, ECF No. 17.)  Mr. Barrus further argues the ALJ failed to comprehend the neurology opinion from Dr. Langford and failed to discuss his primary care physician, Dr. Judy's, opinion.  (Id. at 12-13.)  The Commissioner argues the ALJ provided legitimate reasons to discount Dr. Embley's opinion, specifically inconsistency with Dr. Embley's records and the objective diagnostic evidence and heavy reliance on Mr. Barrus's subjective complaints.  (Def.'s Br. 20-21, ECF No. 20.)  As to the agency physician opinions, the Commissioner contends the new evidence following their evaluations would not have changed their opinions.  (Id. at 22-23.)  The Commissioner further argues the ALJ did not need to reference every piece of evidence; these additional records do not constitute opinions; and to the extent Dr. Judy's record does, it falls in the realm of determinations reserved for the ALJ.  (Id. at 24-25.)  The undersigned finds harmless error in the assessment of Dr. Embley, and no error in the evaluation of the agency physicians but notes these assessments may change based

on the new evidence and a better understanding of how to evaluate migraines. The undersigned does find the ALJ erred in not analyzing the opinions of Dr. Langford and Dr. Judy.

An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c). If the ALJ finds a treating physician's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record," the ALJ must give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2). When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider certain factors. 20 C.F.R. § 404.1527(c) provides these factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

See Watkins v. Barnhart, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted). To reject a medical opinion, the ALJ must provide "'specific, legitimate reasons.'" Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)).

Yet the ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review). When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. See Richardson v.

Perales, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence). The court may not supply possible reasons for assigning the weight the ALJ did and may only evaluate the ALJ's decision on the stated reasons. Robinson, 366 F.3d at 1084-85.

Here, the ALJ did not accord controlling weight to Mr. Barrus's treating medical provider's opinion. Instead, the ALJ's decision provided specific reasons for granting "little weight" to Dr. Embley's opinion as asserted by the Commissioner. (Tr. 21.) Among the reasons, the ALJ discounted Dr. Embley's decision because of its inconsistency with the objective diagnostic evidence. (Id.) As discussed above, objective diagnostic evidence is not available for migraines. Therefore, the ALJ discrediting Dr. Embley on this basis does not reflect a legitimate reason to discredit him. However, the other reasons asserted are legitimate. The undersigned does find however, that with the inclusion of Dr. Brown's records in the administrative record, the ALJ's opinion may change as the record as a whole has changed.

The ALJ accorded significant weight to agency physicians' opinions. (Tr. 21.) In support of that weight, the ALJ noted their experience with disability claims and the Act and the consistency of their opinions with the record as whole. (Id.) As noted above, their opinions may change with the review of Dr. Brown's notes, and in turn, the ALJ's opinion of the agency physician's opinions may change.

Because the ALJ provided specific, legitimate reasons for according little weight to Dr. Embley's opinion and significant weight to the agency physician opinions, this Court finds no legal error. However, on remand these findings may change given the new evidence and a more complete understanding of evaluating migraines.

As to Dr. Langford's assessment that Mr. Barrus has intractable migraines with auras but not "migrainosus" (constant), (tr. 474-477), the undersigned finds this assessment an opinion that the ALJ had to weigh. Failure to weigh it constitutes error, and the error carries potential harm as it could change the ALJ's assessment of Mr. Barrus's credibility and the weight accorded to the other medical opinions as this opinion is from a neurology expert.

Similarly, the ALJ should have explicitly addressed Dr. Judy's statement that Mr. Barrus "is not in any condition to work right now, emotionally or physically." (Tr. 469.) The ALJ may have discounted it for the reasons asserted by the Commissioner, but nothing in the ALJ's opinion gives any indication that the ALJ did that as opposed to having just missed the opinion. Failure to weigh this opinion also constitutes error, and the error carries potential harm as it could change the ALJ's assessment of Mr. Barrus's credibility and the weight accorded to the other medical opinions as this opinion supporting an assessment of Mr. Barrus's combined impairments and their effect on his ability to work. These failures provide additional reasons to remand the case.

## RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the District Court remand the Commissioner's decision.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. Id. Failure to object may constitute waiver of objections upon subsequent review.

DATED September 16, 2017.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge